Our next case is Dawson-Murdock v. National Counseling Group, Inc. Ms. Hopkins, good to see you this morning. Good to see you, Your Honor. Good morning, and may it please the Court. My name is Elizabeth Hopkins, and I'm here on behalf of the plaintiff appellant in this case, Ms. Dawson-Murdock. The purpose of ERISA is to protect the interest of workers and their families in the employee benefits that they're promised. ERISA does this by requiring that all employee benefit plans be managed and administered by fiduciaries who are subject to the highest trust law standards of prudence and loyalty, standards that this Court referred to in Tatum, in its Tatum decision, as the highest standards known to law. And it requires that all plans be in writing and that the written plan documents name a plan fiduciary responsible for the administration and management of the plan. Given these expressly stated purposes and requirements in ERISA, the Supreme Court and this Court have held a number of things that are directly relevant to the case here. First, the Supreme Court in Verity v. Howe held that plan administrators perform a fiduciary function when they provide information to plan participants and beneficiaries, excuse me, in order for them to make informed choices about their plan benefits. What case was that? I'm sorry. Verity v. Howe. And in the same case, Verity, the Supreme Court held, not surprisingly, that plan fiduciaries can't lie to plan participants when they speak to them. That was a, the facts there was a large meeting about a merger, a reorganization where everyone got together in person and they had a big discussion. Pretty different facts from what we have here. Would you agree with that? Yes, I would say that they're different facts, but I would say that it was a closer case, actually, whether the company in that case, which was talking to its employees about corporate business and what was going to happen with the company, as well as plan benefits, whether the company was acting as a fiduciary in that case. And the Supreme Court said, well, yes, not everything that a corporation does, obviously, even if it's named fiduciary, is a fiduciary function. But when, to the extent that it was talking to plan participants about their benefits, that is at the heart of ERISA's fiduciary responsibilities, and that was a fiduciary function when it was doing so. So, yeah, they're very different facts, but I think it's very supportive of the position of the plaintiff in this case. Also, sort of extending what the Supreme Court did in the Verity decision, this court in its Griggs decision held that plan fiduciaries have the obligation to give material information to plan participants that they need to know to protect their interests, even in the absence of a specific question about the plan benefits, that there are instances where the plan fiduciary has the obligation to affirmatively come forward and give this kind of information to plan participants. Ms. Hoffman, as I understand your colleague's argument, it's that notwithstanding the fact that the employer is a named fiduciary in the plan documents, that really that title is meaningless, that the real authority with the discretionary power to grant or deny benefits and to advise employees of the benefits was the insurer and the insurer alone. What's wrong with that conclusion? Well, UNUM probably was a fiduciary to the extent that it was deciding claims for benefits, and it had certain authority with respect to those claims. But as the named plan fiduciary, the company, National Counseling Group, had very specific responsibilities with regard to giving information to plan participants and beneficiaries and giving information actually to UNUM as well. Like one of the things that they were responsible for under the plan document was to inform UNUM if an employee became ineligible to participate in the life insurance plan, presumably, you know, for a number of reasons, but including the reason that was asserted in this case. But isn't the question whether or not the employer here was actually exercising discretionary control or authority over the plan and simply giving advice or responding to employees' questions? How is that exercising discretionary control or authority? Well, what the company did in this case was accept premiums from Mr. Dawson, the decedent, before he died for his life insurance benefits and continued to do so, even though, you know, it asserts that he had begun to work fewer than 30 hours a week and so was a part-time employee and was no longer eligible. And it continued to do so even though he could have, he should have had the opportunity to convert his life insurance plan into an individual policy and they never gave him that information. You know, that is at the heart of fiduciary responsibility to protect plan participants. I'm sorry, I didn't mean to talk over you, but to follow up on just Diaz's point, I don't see in the complaint exactly what you allege to be the discretionary act. I appreciate that they are named fiduciary. I assume that means there's some discretionary act somewhere, but what is the discretionary act that you say was done here that, you know, that underlines your claim? The discretionary act would be giving information to plan participants and I would say accepting life insurance premiums and forwarding them to the insurer of the plan with the understanding that they were doing so because that participant was entitled to participate in the plan. But what's discretionary about that? I mean, that seems like a fairly mechanical thing that needed to be done regardless of whether or not the employer was a named plan administrator or not. Well, the discretion was that the employer had the obligation to inform Unum if that person was still participating, if they had become ineligible to participate, and also... That doesn't sound discretionary to me. That sounds obligatory. Well, it's discretionary to the extent that... I get the point that they didn't do it, but how does that make that discretionary? Well, I mean, it's something that they have control over. It's not sort of a ministerial kind of a function and the same thing for giving information to plan participants and beneficiaries. And really, I think the Griggs decision, if you look at it, what the employer failed to do in that case was to inform an employee about the negative tax consequences of a rollover of pension assets. Actually, it wasn't the employer. I think it was another fiduciary. But this court said that that was a fiduciary breach, and it quoted a number of other cases, including a case from the D.C. Circuit, favorably quoted the Eddy decision that held that when an ineligible person contributes to a fund, fiduciary has a duty to inform him of that ineligibility within a reasonable time. It also quoted a decision from the Third Circuit called Bixler that an employer has an affirmative duty to inform a beneficiary of their right to convert a health care policy, in that case, to COBRA benefits, continuation benefits, when they stop working. So I think if you put all of those together, it's very clear that this kind of a failure to give this critical information to a plan participant and to continue to take, you know, to take premium payments from that participant, particularly where that participant, it's quite clear, had an ability and the intention of continuing their coverage and a right to convert their coverage to an individual policy. I think it's very clear that that is fiduciary stuff exactly at the heart of ERISA. I mean, if you think about the sort of fiduciary setup of ERISA and even the word fiduciary, you know, it's quite clear that the idea, the word fiduciary comes from the word, you know, it's related to the word for fidelity, loyalty. It's quite clear that this notion of loyalty and protecting the interests, not just of the plan as an abstract entity, but of the beneficiaries of the plan, the participants and beneficiaries in the plan is at the heart. Is Griggs your best opinion, best decision out of the four circuits? Griggs. Griggs is your best opinion. I would say Griggs is. I would also say that the McCravey decision is quite relevant because McCravey, although the court didn't decide specifically whether there was a breach there or whether that was fiduciary activity, sort of assumed that this kind of activity is within the scope of ERISA's fiduciary duties. It was really specifically aimed at a question of what kind of remedies are available. But I would say that Griggs and Verity itself are the best decisions. It's the firm duty to inform when the fiduciary knows silence might be harmful. That's right. In that Griggs case. Yeah. So I would say that is the best decision. Is there any jurisdictional problem here? Any jurisdictional problem? Jurisdictional problem. Well, the district court didn't say whether it was dismissal with prejudice or without. And you had asked for an opportunity to amend and they didn't deal with that. I don't believe that there's a jurisdictional problem. Okay. I just want to throw that out. Yeah. I hadn't thought about it. I hadn't raised the issue. But I'll mention it. Yeah. Well, and I'm not sure considering the fact that the court held that there was no fiduciary activity, you know, what kind of amendment would have been possible. I mean, we fundamentally disagree with that. You asked for the opportunity to amend in your response to the motion to dismiss. And the judge didn't explicitly rule on it. Right. But that was before the court ruled on the issue. Well, it was. He granted the motion to dismiss. Right. Right. But you said if he granted the motion, you want to amend. I take that back. All right. So you abandon that. Did you take back that you want to amend or did you have jurisdiction? No. We have jurisdiction. We have jurisdiction. Okay. Yeah. I just wanted to mention the non-binding unpublished decisions from this court that the district court relied on I think are wholly distinguishable. The Moon decision, in that case, the court Well, they aren't binding on him or I. That's right. They're not binding. But I also think they're quite distinguishable. In that case, the court held that an employer wasn't acting as a planned fiduciary and accepting life insurance premiums, so it seems spatially kind of analogous. But in that case, the plan named another corporate entity. That's Moon, right? That's Moon that wasn't named as a defendant as the plan administrator. And here, of course, national counseling was the name administrator, and that makes all the difference. Just like it did in Amara versus Cigna versus Amara, it makes a difference that we're talking about a fiduciary here. There was some language in Moon, again, understanding that it's not binding, that suggested that even a plan administrator, just the title itself, would not be enough to warrant similar treatment as an ERISA fiduciary. Am I remembering that right? There may have been language to that effect, but I think that this is really distinguishable because… I guess that gets back to an earlier point that we were talking about. Titles may not be completely irrelevant, but they're not outcome determinative here, are they? You're not saying that simply by virtue of being a plan administrator, you're also an ERISA fiduciary, are you? Yes, we are saying that. Yes, ERISA makes people fiduciaries by virtue of being a named trustee or named plan administrator, but it also goes beyond that. But you have to go… I'm sorry. No, you go ahead. But even if that's true, you still have to tie the complaint of conduct to a discretionary act. Do you agree with that? Yeah, or an act of management, because if you're given authority, actually also under ERISA for plan management, which you are by virtue of being named the plan administrator in the plan documents, then you are given that authority. So that's really what's going on here. If there's no fiduciary, if they're not a fiduciary here, national counseling, then there is no fiduciary. That's correct. That's your position. That's responsible for these particular… Then there's no fiduciary at all. Right. And that's… And you're saying there has to be a fiduciary. There always has to be a fiduciary, and that's also why that interpretive bulletin from the Department of Labor… That's why I read your position. But why is that, right? Why couldn't then… Why couldn't… I mean, I thought you said earlier they were a fiduciary, at least for denying or accepting claims. So there's… I mean, I'm no ERISA expert, but you'd know more about it. But, I mean, as I understand it, there can be a named fiduciary, as you say exists here, and there can be a de facto fiduciary. And de facto is the entity or party that carries out discretionary acts. Right. But no one actually is claiming here that these responsibilities were with UNAM. And we certainly don't assert that they were. You can also become a fiduciary by virtue of having the named fiduciary sort of grant you part of its discretion. But, again, you know, part of what ERISA requires through these planned document rules is that it be clear to people who is responsible here and what are people's responsibilities. It's not to say that you can't have a de facto fiduciary. It expands the universe of fiduciaries, but it certainly doesn't take away the obligations of those who are named as planned fiduciaries. And that is why the interpretive bulletin also is distinguishable, because it was talking about a situation where someone who is not a named planned fiduciary takes on ministerial acts under the guidance of someone else who is a planned fiduciary. That's not the situation here. And, you know, to the extent that the court or the district court, you know, said I've got to defer to this interpretive bulletin, I think that was misplaced because it misunderstood the interpretive bulletin. And, in fact, the position of the Department of Labor, which it took in its amicus briefs in the McCravey case, is that it's a breach of fiduciary duty to fail to inform a participant of his conversion rights, her conversion rights in the McCravey case. But thank you. Mr. Capps, it's good to have you, sir. Thank you, Your Honor. May it please the Court, Jeremy Capps on behalf of National Counseling Group. I think the court got the issue right with your questions to counsel. This circuit has held and held it as recently as 2008 in the Gordon v. Cigna case that fiduciary status is not an all-in-one status. Just because you may be named a fiduciary or a planned administrator, that doesn't make you a fiduciary for all purposes under ERISA. And, instead, what this court said is the inquiry must be examined with respect to a particular activity that's at issue. And so what the court has to do is look at not only the complaint, but the summary of planned benefits as well. The summary says this is what National Counseling is fiduciary? So what the summary of benefits says is that National Counseling Group is the planned administrator and a named fiduciary. And a named fiduciary. It does say that. And if they're not the fiduciary, then who's the fiduciary? So what it also says is that the benefits of the plan are administered by the insurer, by UNUM. And so that makes, with respect to the plan and the application of the plan in this case, that makes UNUM a potential fiduciary. So what does a named fiduciary mean in this context? So in this context, it may mean, well, let me do two things. With respect to the allegations in the complaint, what we have to do is look at in collecting, in deciding whether Mr. Murdoch was entitled to benefits, is that a discretionary act on behalf of the employer? Can they exercise any discretion in the application of the plan? We just have to decide whether this thing goes forward. It's thrown out on a 12B6 one. That's correct. Well, and then the question is whether the 12B6 ruling was an error. That's correct. And whether it goes to discovery. That's correct. That's right. We're not deciding whether anybody gets benefits. We're deciding whether the case goes forward. But what you have to decide is when. And I'm asking you, if they're not the beneficiary, you say your client's not the beneficiary, not the fiduciary, who's the fiduciary? So for... And you say it has to be UNUM, but the plan doesn't say that. Well, what the plan... The plan is materially misleading to the world. No. The plan doesn't say... It says the plan fiduciary is national counseling. You read it. And for purposes of ERISA, what this court has to do is not look at... It's not all for one. What the court has to do is look at for the particular activity. So you want us to rewrite the plan, that thing that you just read, and say that UNUM is the fiduciary for these purposes. And maybe you can do that on a summary judgment ruling. I don't know if you can. Maybe you can convince a jury of that. But I don't know how you're doing on 12b-6 when you've got that thing in front of you. So the court doesn't have to rewrite it because what the law... Well, it doesn't say anything about UNUM being the fiduciary. It says the fiduciary is national counseling. So what the law and the force... So you're saying fiduciary, that the plan, that doesn't mean what it says. No. You have to say it doesn't mean what it says. So what the law and the force circuit is, is you have to decide whether an employer is a fiduciary for the purposes in the complaint, for the actual purposes. It says you're the fiduciary. It says we are the plan administrator and a named fiduciary. That's right. The only one named there is you. No. The benefits of the plan are administered by the insurer. Did you say that otherwise UNUM is the fiduciary? No. But the benefits are administered. The only time the word fiduciary is used is as to national counseling. Sure. But this court still looks to what is alleged in the complaint and what the particular activities are. Could you answer then my question earlier about what does it mean to be a named fiduciary with respect to this plan? Or is that just an empty title with no meaning? Sure. So an employer in implementing the plan or making changes to the plan would have to have the interest of its employees, a fiduciary interest in making those changes. What the plan says is the employer's right is only to request a summary of benefits change. So that's a discretionary act. The employer could take a discretionary act and decide that it wanted to request a change to the plan. And in making those discretionary decisions, it would be acting as a fiduciary. In this case, what we're dealing with is a limited ministerial administrative situation of we apply what the plan itself says. The employer can't change the benefits of this plan. It says it right there. The employer can only request a summary of benefits change. But what about Griggs? In Griggs, this court held that as the administrator of the plan, which is what your client is in our plan, correct? It's an administrative plan. In Griggs, you were talking about the named administrator. Here, we're talking about the named administrator. And the language Griggs used is the administration and management of the pension plan. And this kind of goes, I think, a little bit to Joseph Diaz's question, is what does it mean? I mean, it seems to suggest that you would have some administrative and management duty. And it follows, as I read Griggs, that if in that capacity, you're aware that people have information that's faulty, you have some affirmative duty to correct that. And so I understand. I mean, Griggs seems like it's a tough case for you. Can you explain how Griggs is distinguishable or why that doesn't require us to reverse? I think Griggs is not a difficult case. And it's entirely different than the circumstances that are set here. And I think the district court got it right. So in Griggs, what you had was a retirement plan. And the employer was administering that plan, meaning they were making payouts. And so the employee came to them and applied for a payout. And so the employer was making discretionary decisions about whether an employee could roll out or roll over its plan without taxation. It was calculating benefits. And it advised the employee that this employee could make a rollover without a adverse tax incentive. It later, the employer, in making those calculations, learned that it wasn't possible for this employee to make the rollout, a rollover, without an adverse tax consequence. And the employer, despite taking those steps and applying and administering the plan with respect to this particular employee, never told the employee. And so this court said that under those circumstances, when you're acting in that discretionary capacity. And there was really no dispute about that, right? The employer admitted that it was acting as a fiduciary for that purpose. Right. And there was no dispute. And this court said, held it is critical that Greg's misunderstanding was fostered by DuPont's explanation in this discretionary process of administering the plan. We might view the duty to inform in a different light if there was a different explanation, such as. Why wasn't Ms. Murdoch's or Mr. Murdoch's understanding influenced by the explanation from your client? It wasn't. So it wasn't because, one, we have a summary of benefits that says exactly what the plan, what the benefit plan is, which is you have to convert your life insurance. If you go to part-time status, you have to convert your life insurance plan to an individual policy within 31 days. That's in the summary of benefits. There's no dispute. And that's not misleading. There's no allegation that that's misleading. And that's different than what we had in Greg's. Well, but I guess back to Judge Quattlebaum's question. If, in fact, there had been no dispute about whether your client was a fiduciary and they had said something that was inconsistent with the terms of the summary description in the plan, isn't that a jury question as to whether or not he was misled by that statement? So if we look in the complaint, there's no factual allegation. No, no, I get that. That's not this case. But I'm asking you that if you've got those different, that conflict in the evidence, why wouldn't that be an issue for the jury? Again, the difference is in the Griggs case, what we were, what they were, the plan that they were exercising management over was a 401K plan or a retirement plan that they were making payouts out of. They administered that plan. Unum, in this case, administers the life insurance plan. But the issue in Griggs, I think you're right, as I recall, that there were responsibilities and duties that DuPont had in terms of that retirement plan that may have been greater factually than here. But my memory is that Griggs' decision was based more on the representation or lack thereof than what they were doing about calculating. What had happened, and as I understand what Griggs was, was the employer, in addition to administering the plan, making these discretions, informed the employee that the employee could make this transaction roll over without a tax consequence. The employer then later, looking into it, learned that that wasn't accurate. Then the employer did not tell the employee that. That's where Griggs came down. That's wholly different than the situation we have here, which is Unum makes the determination as to whether an employee qualifies for life insurance benefits and makes the claim determinations. All of that discretion is within Unum. Who were the communications with here? Pardon me? Who were the communications or lack of communications with here? You're focused on, I think, the lack of communications to the husband who died. That's correct. And then she emphasized the communications to the surviving spouse, the widow lady, which were misrepresentations. Well, I won't call them misrepresentations, but they were situations where Mr. Bame Well, they told her, don't worry about it. Everything will be taken care of. He indicated that the company was going to try to take care of it. We're going to take care of this for you. We're taking care of this for you. Your husband died. He's our employee. We're taking care of this. Sounds like they're doing their job. Don't you worry about it. So the distinction in this case with those types of communications is they occurred after. You say that the communications to the widow are irrelevant, immaterial, unrelated to anything in this case. They do not create. Isn't that correct? Yes. They're irrelevant. They do not create a fiduciary obligation. You got a fiduciary obligation in the thing that you read to me a while ago. You read it. We're the fiduciary. It's spelled out right here. We're the fiduciary. That's what you say. You read it, but you're saying what was said to the little lady doesn't have anything to do with your client. So what the law on the Fourth Circuit is. Well, Griggs is the law on the Fourth Circuit. Understood. It's never been changed. You don't say anything overrules Griggs, do you? What I say is our case does not fall under Griggs. You're saying Griggs is distinguishable. It absolutely is. Griggs is irrelevant. It absolutely is. And the statements to the widow lady are irrelevant. They do not meet the standard that ERISA requires and that this court requires under the functionality test to establish fiduciary obligations, fiduciary status. And what ERISA says is to the extent that, and that's what the court's focused on. To the extent that an entity exercises discretionary authority or control over the plan, over the management of the plan or the administration of the plan. That's when you get to fiduciary status. Here, the claim had already been denied by UNO. Mr. Baham and National Counseling Group has no discretionary authority in managing the life insurance plan at that point. I thought you all talked before the claim was denied. Pardon me? I thought you talked to her before the claim was denied. Mr. Baham talked to her once. He communicated to her and said UNUM has denied the claim. You will be getting an official notice from UNUM. And in fact, she did. But he also says we're going to pay and you, which I can't remember if he said you don't need to appeal. But he said you don't need to deal with the insurance company because we're going to take care of it and you're not going to have to deal with them again. Right. Whether or not that's before or after the denial, why is that not a discretionary act about what to communicate to a beneficiary? Or at least potentially a discretionary act if we need to see some discovery to figure out for sure. Because he couldn't exert the benefits decision. The benefits portion of application policy is out of his hands. So is it your position that if he doesn't have any ability to exert discretion over whether to grant or deny the claim, that's the end of it? And what he says in the role as administrator and communicator with the beneficiaries that you can't be a fiduciary in that? Yes. Because he couldn't exercise any discretion with respect to the appeal process in the plan. The employer, right, the employer cannot change. It says it right in the summary of benefits. The employer cannot change the benefits of the plan without an UNAM's approval. But the plan, I guess, would have provided an avenue for appeal, right? But that was foreclosed, if you would believe the allegations of the complaint by virtue of these statements that Judge Quattlebaum has just talked about. That is... Because the fiduciary told her not to appeal. Under those circumstances... That sounds fairly discretionary. Well, it isn't because you still have to look at what the activities... It may be an abuse of discretion, but it's... It may have been a mistake. It may have been an abuse of discretion. And we cited a case in Weeks which says just because you make a mistake doesn't mean that you are a fiduciary or that you violate a fiduciary duty. Well, you're the fiduciary by the plan. Right there, you read it. At the outset of your argument, you got to bring it to it. It's the only term, only entity referred to as the fiduciary is your client. The only one. But not for purposes of the acts that are complained of. That's what the law in the Fourth Circuit says. That's what this court said in 2018. And if you look at the summary plan documents, it says benefits are to be administered by the insurer. That's where... They didn't sue UNA. What's the 2018 case? It is... Gordon v. Cigna. You say that modifies Griggs? No. What it says is... Do you agree with me that it can't change Griggs? Well, under those... Do you agree with me that... Under those factual circumstances, that's correct. Do you agree with me that it couldn't change Griggs if they're in conflict? If they're not in conflict and it did not change... If they're in conflict and it did not... Do you agree with me it couldn't change Griggs? Yes. And it did not change Griggs. I'm not suggesting that Griggs is not good law in the Fourth Circuit under those circumstances. Mr. Capps, I want to go back to my question. What does misrepresenting her ability to appeal have to do with benefits? So, it would go with the actual ability, right? How the plan document in UNUM applies how you recover benefits. So, it's UNUM's decision and UNUM's discretion as to whether... Well, there's no discretion. I mean, the plan sets out, I imagine, a process for appealing. And the claim here is that she was dissuaded from exercising those rights under the plan by misrepresentation. That's... There's nothing... That has... It seems to me nothing to do with benefits. It has something to do with her being able to prosecute her rights under the plan. So, Mr. Baham doesn't have the discretionary authority to have someone waive those rights. This goes back to the state law claims. And this is what we argued in the district court. Those claims of, hey, you told me you were going to pay... Did you have an oral argument in the state court? We did not. That's what I thought. In the district court, we did not. Yeah, it was a written argument. It was decided on the brief. This is the first time anybody has talked to a judge face-to-face in this case. Yes, sir. It goes back to the state court arguments and the state court claims, which were the claims alleged to breach a contract claim and a negligent or a detrimental reliance claim. And I see that my time's up. You go ahead and finish your thought. And those claims were precluded by ERISA. And so, it's unfortunate the situation. There's no doubt about that. But Mr. Baham didn't have the discretion, and that's what the Fourth Circuit case law says, in this particular activity, didn't have any discretion with respect to the application of the benefits plan, of the life insurance plan that rested. And I ask that the court affirm the district court's decision. Thank you very much. Thank you. Ms. Hoffman? I'd just like to make a couple of additional points. First, it's true that Griggs was about a pension plan, and it's also true that the employer, DuPont, in that case, had arguably greater discretion and responsibility with regard to that plan because it seems to have administered the plan benefits. But I think the court is right in recognizing that benefits and the claim for benefits are not what's at issue here. It's whether, are the fiduciary breaches by the plan fiduciary in misleading and in failing to inform both the participant and the widow in this case of their rights. And that was true in Griggs as well. Griggs, you know, DuPont admitted that it was the plan administrator, but it said, you know, we have, this is not fiduciary stuff. We have, you know, we have no responsibility with regard to giving correct information to plan participants and beneficiaries and to, you know, to giving them information when they don't ask for it. And this court said, no, you're wrong. That's at the heart of fiduciary activities. And the same holds true here. The second and related point is that there were two sets of communications or miscommunications. You know, one was that you have focused on, I think, a lot are the communications to our client, the widow in this case, which were, if not outright lies, were terribly misleading. You know, the vice president for human resources for the company, Mr. Baham, you know, told the plan participant that the company was going to pay. And whether or not national counseling administered plan benefits, there's little reason to think that it couldn't have voluntarily paid her, you know, the benefits that her husband had paid for and was expecting that she would get upon his death. But that issue, I mean, I think that that issue, the one you're talking about now, really go to that last point that national NCG says that the way ERISA works, it gives certain benefits, but it precludes certain benefits that would exist, including state law claims that wouldn't otherwise exist. So, I mean, there is a tradeoff in this, and I'm not really talking about whether it's a fiduciary duty, but I mean, there is some give and take in the enactment of that statute that you have limited rights as a beneficiary under the statute. But in return for those, you give up state court rights that you might otherwise have. Right, but the rights that you have are not so limited that when you've acted to your detriment because of a fiduciary breach, you don't have a claim. And in fact, that's what this court held in McCravey following the Supreme Court's decision in Cigna versus Amara, that there is such a claim under ERISA's equitable relief provision, 502A3. And that's exactly what the plaintiff in this case is asking. But I would also like to stress that the allegation is that Mr. Dawson was also influenced by the actions of National Counseling Group in taking premiums and by so doing in making him think that he still had coverage under the plan and not informing him about his rights to convert the policy. When in fact, these were almost certainly National Counseling Group's duties under the plan and not the duties of UNAM. Under the plan, they took the premiums. They made the plan disclosures to UNAM about people's right to ability to participate. And they have, you know, primarily had the dealings with the participants and beneficiaries in the plan. And my third point, again, related to the first two points, is if there are any questions about this, about the role of National Counseling versus the role of UNAM in this matter, what the plan documents provided, this certainly was not, should not have been decided on a motion to dismiss on a 12B6 motion. It really needs to go either to summary judgment or to trial. And I think I'm just about out of time. So unless the court has any further questions. Thank you, Ms. Hopkins. Thank you. We appreciate it. And we'll come down in Greek Council, and then we'll go to our final case.
judges: Robert B. King, Albert Diaz, A. Marvin Quattlebaum Jr.